Good morning. Lee Eggerman on behalf of the appellate Ronald Katz. We have here a situation which is competing claims for surplus proceeds after a trustee sale. There's no question that at the time of the trustee sale, the bid wells, whose lien was purchased by Mr. Katz later on. What did he pay for that claim? The deal between the bid wells and Mr. Katz was the bid wells would receive 20% of gross proceeds. In other words, roughly. That's a sale. It's not a gift. Mr. Katz and the bid wells have no relationship and are third party other than making this business transaction. Everyone, frankly, from dealing with Mr. Eckert, with litigation costs, and the bid wells effectively got a free ride by paying and making a deal with the Katzes, not incurring any additional legal fees, and thus getting roughly 40% of the net proceeds, or Mr. Katz would get roughly 60% of the net proceeds. That was the deal made between the two parties. We're here on cross motions for summary judgment with the district court granting Taylor denying yours, right? That's correct, Your Honor. And what was the basis for the grant of summary judgment to Taylor? It's not quite clear in the judgment, although my reading of the judgment is that the judge and the district court stated that the bid wells missed a 90-day statutory filing deadline. The 90-day statutory period actually references Section 2924J's mandate that a court, the Superior Court, holds a hearing within 90 days' time. That never occurred because the case prior to the 90-day period was remanded to federal court. Removed. Removed, excuse me. And so that hearing never took place. And that 90-day statutory deadline is not a deadline for filing a claim. It's an instruction to the court by the legislature to hold the hearing by that time. When the case was... Had it stayed in the Superior Court, the failure to file the claim within the 90 days would have been fatal or not? I'm sorry, I didn't hear the first part of the question. If the claim had not been filed in the Superior Court and the case had not been removed, would that have been a fatal error? Well, certain things would have happened. For example, under the statute 2924J, the clerk of the Superior Court must give notice to all claimants of the hearing. That, of course, never happened because the hearing was never set. So additional notices were given. But, of course, it is possible. Would they have been a claimant if they'd never filed a claim? Yes. Claimant, as the term is defined, is it's not restricted to people who've filed a claim with the trustee, but it's anybody who's on title. So the clerk must give notice to all parties who are on title and have a possible claim. I should also note for this court that Elizabeth Bidwell never received any notice from anyone. The only notice Alan Bidwell received was from the trustee stating that the funds were going to be deposited into the court. So, so far, so good. Didn't that notice tell her she had to file a claim? The notice states, and it's an interesting, 2924J is very interesting, states that the trustee must give notice to claimants that you must file within 30 days. The next subsection states the court shall, a.k.a. must, consider all claims filed 15 days before the hearing. I read the statute, and we've gone back and forth with the district court, of course, as stating as such. It says the claim must be filed. The trustee filed the entire Bidwell claim along with all claims submitted to the trustee. The trustee's notice that goes out goes out to all claimants, whether they've submitted a claim to the trustee or not. To me, the most logical reading of the statute is it's effectively notice to the claimants who have not filed with the trustee. I make that conclusion based on the fact of 2924JD, which states that all claims that are filed, and there's no restriction on how they're filed, must be heard by the superior court if they're filed within 15 days prior to the hearing. On the superior court level, of course, no hearing took place. And I think what should have happened when the case was removed to federal court is federal interpleader statute procedure should have taken over. Mr. Taylor makes an argument that 2924J's instruction to the trustee to give notice that all claims must be filed within 30 days is some sort of statute of limitations. I don't think that argument is very strong. I've never heard of a statute of limitations that applies sometimes but doesn't apply other times. By its own terms, 2924JE, none of its provisions apply when an interpleader is followed. It's a voluntary summary procedure that can be utilized but doesn't need to be utilized. What was the basis for removal to federal court? The U.S. government, the IRS, had a claim several notches down, and they removed it. Do they still have a dog in this fight? Basically, no. They didn't, and they didn't at the time of the hearing of the district court. Okay. So we have five reasons on the superior court level why I don't think there could be a waiver. Number one, Elizabeth Bidwell never received any notice from anyone. What sort of anticipating your arguments, and they were in the brief and well stated in the brief, is that these, the issues that you've ticked off, were never resolved in state court. Never resolved, and the parties never got proper notice. Whether they got prior notice, whether there should have been a hearing date, whether the 30 days is, in effect, a statute of limitations, whether the removal told any period for filing a claim, all of those kinds of issues were not decided when the case was remanded. That's absolutely correct, Your Honor. What would be wrong with the panel remanding the district court with instructions to remand back to state court since the U.S. says that it's so far down the line that it doesn't have, in effect, a dog in this fight anymore? I believe that's absolutely appropriate. What I find troubling is that parties who had a property right, a lien, never got notice, and when I say never got notice, that applies to Elizabeth Bidwell. To be clear, Alan Bidwell got notice from the trustee, but never got notice from the clerk. And then you have deadlines, and I understand why there was confusion at the district court level because you don't have a federal equivalent to the summary procedure. Did you ever move to ask the district court to remand the case to the state court, or was the U.S. involved in it all this time? I never asked, and for the reason, because up to the district, I believe the removal was proper. I believe when the U.S. attorney asked for removal, it was a proper removal to federal court. But you say you couldn't remand it now. Well, at the time, now I believe it's proper, but up until the hearing time, the U.S. was still claiming an interest. So there's no opportunity for me to make that request. Let me ask sort of the flip side of the question I asked earlier, and that is what would be wrong with the U.S. district judge looking at the issues that we ticked off before, notice, et cetera, and construing California law and concluding that for a bundle of reasons, Katz, on behalf of the Bidwell claim, had not filed a timely claim? I think the short answer is... Whether the district judge would be wrong or right, but what's wrong with the U.S. district judge saying, in part, I have to decide California law here. It's something we do all the time in diversity cases, and I look at all of this stuff, and I conclude it's not a timely claim. Boom. Judgment. Not going into the substance, because I think you want to ask me more of a procedural question, is once the case was removed, federal procedure should have been applied for two reasons. Number one, that's Erie View Tompkins. And number two, under 2924 JE, this statute specifically doesn't apply if there's an interpleader. I mean, that's in the statute itself. There's no question the case was treated as an interpleader because there was no 90-day hearing. A trial date was set. So many judgment motions were filed. In fact, I asked the court this very question. This was my first question, and I said, Your Honor, is this court treating it as an interpleader? There was sort of a nod of the head, and I said, well, then, Your Honor, under 2924 JE, 2924J does not apply. And he said, well, now, what if I don't consider it to be an interpleader? So I was sort of stuck, for lack of a better term, because in my opinion it had been treated as an interpleader. I thought that was fine. You come to the same answer under an interpleader because there was no default, and under 28 U.S.C. 1655, in order to remove a lien, there must be personal service if they can be found. If they cannot be found, which is not the case in the present, there must be publication, service by publication, and there was neither. No default was taken. You can file late if no default was taken. So under either set of rules, I think my client as four-and-a-half-year seniority and priority was in great shape. It's a combination of the rules and I think a misunderstanding of the client. My client is Ronald S. Katz. Well, I thought your client was Bidwell. He is the successor in interest to the Bidwell lien. He purchased the Bidwell lien. He purchased it. He acted as their lawyer. No, he never did. He said, I'm going to prosecute it for you, and you'll get 20 percent of the recovery. He never acted as their lawyer. He purchased it, and he never appeared as a lawyer. He simply made a business deal. And, again, it's funny because the district court had the same sort of reaction that I believe you're having, which is that there's something untoward about someone purchasing someone else's lien. Well, the Bidwells knew they didn't have a valid lien. That's incorrect. They knew that. That's incorrect, sir. Well, why would they settle for 20 percent then if they knew they had a valid lien? I'll explain the dynamics since I'm the one who had the conversation with their attorney. Katz had priority number one of the relevant parties. There's a major question of whether Katz's lien was waived. He lost his because the court found he settled his in that global settlement, right? That's correct. That's what the court found. That's what the ruling was. So he didn't have anything to stand on unless he bought out somebody else. Well, that ruling was after the negotiation. So at this time, Katz was number one with a question mark as to whether the lien was still valid, but he still had priority position number one. He stands, though. Katz stands in the Bidwell's shoes, right? Certainly. If their claim is untimely, he's out of luck. That's absolutely correct. There's no question about that. I think you've teed up the issues pretty well. You've got some time. We hear from the other side, and then you can come back and tell us what's wrong with our argument. Thank you, Your Honor. Thanks for coming in today. Counsel? May it please the Court, good morning. My name is LeVar Taylor. I'm here appearing on behalf of the Law Office of A. LeVar Taylor. Okay. Let's hope you don't have a fool for a client. This case involves a question of whether the district court abused its discretion in refusing Katz to assert the claim At the time of the Bidwell's, more than 14 months after the Bidwell's were given a notice saying you have to file a claim within 30 days. At the time the notice was given, were Mr. and Mrs. Bidwell divorced? There's nothing in the record indicating that. They were at all. Were they living together? As far as we know, they were living together. She says she didn't get notice, but he did. That's what we know. Well, let me jump to that point. When you look at the record, in December of 2004, our office filed a motion for summary judgment. Ten days later, Katz acquires the Bidwell claim, effective December 15th. On January 15th of the following year, Katz comes in with a motion for summary judgment. At that point in time, it was incumbent upon Katz to present to the record any defects in service, to come forward with a declaration of Mrs. Katz saying, oh, I didn't get notice. They never did that. They never explained. No one, Mrs. Katz didn't come forward with a declaration. Mr. Katz didn't come forward with a declaration. I'm sorry, Mr. Bidwell, Mrs. Bidwell did not come forward with a declaration. Katz did not come forward with a declaration. Counsel did not come forward with a declaration. They had full and fair opportunity to explain to the court below why they did nothing for 14 months, and they failed to do so. And that's the crux of this case. They had opportunity below to do that, and they did not. They can say anything they want to here in this court, but they did not present any evidence to the court below as to why they waited 14 months after being told that they had to file a claim within 30 days. Where did this come from that she didn't get appropriate notice? Was that back in the state record or something? I believe if you look at the proof of service, it says, and it's different for different documents. For the initial notice, it says Allen Bidwell, and it has an address. Betty Bidwell's name is not on it. When you look at the notice to the parties that were interpleading the funds, that notice was given to Allen Bidwell at the same address. It was also given, by the way, to the Bidwell's attorney, who was representing both of them. The notice of removal to the federal district court was given to that same address, the Bidwell. It was given to the Bidwell's attorney, who obviously knows how to file a pleading in federal district court, because it are supplemental excerpts of record at tab 9. There's a pleading that was filed long after the Bidwells had assigned their claim to Katz. What's being argued about here today, as I understand, is the proceeds from a foreclosure sale. Correct. Of a piece of real property. Correct. At the time of the foreclosure sale, who was the titled owner of the property? Frank Eckert. And how had he acquired the property? He immediately, the deed came back from Joyce Eckert, his former wife. Quick claim deed. Okay. And that happened after, that quick claim was after Eckert's bankruptcy was closed and Katz's bankruptcy was closed. Okay. Go ahead. Okay. There was notice given to the Bidwells and their attorney by the notice given by the stakeholder, the interpleader, said file a claim within 30 days. They didn't do it. I take it your motion for summary judgment going forward recited all these facts, including that no claim had been filed for this period of time. That is correct. Our motion for summary judgment was against Katz, against the IRS. And there was a Federal question there. You asked why shouldn't we remand. There was a Federal question. And I persuaded the IRS that under the Federal law, we were superior. So there was, that was the basis for removal. So that's why it would not be. I didn't mean to suggest by my question that the removal was improper in any way. It was action factually. And what happened was up until some point in time, we haven't really computed it, but it was somewhere around the time of the hearing, the IRS still had a dog in the fight to the tune of $500 to $1,000. Okay. So just to focus on this point, your motion for summary judgment set out a factual basis for why Katz, even on behalf of Bidwell, had no claim and had not made a timely claim. Not quite, Your Honor. My motion for summary judgment said we have a superior claim over Katz. We have a superior claim over the IRS. And we have a superior claim over Gorman. And by the way, Your Honor, we'd like just a ruling because the Bidwells haven't filed a pleading, a declaration that they're not a party. Katz had not filed anything on their behalf at that time. At that time, nothing had been filed. It was only after we filed that motion that Katz went out and acquired the claim from the Bidwells and then came in on an ex parte motion to get additional time to file their own motion for summary judgment. Did he ever file a motion for summary judgment on their behalf? Well, he not. The Bidwells, I mean. No. He filed a motion for summary judgment as an assignee of the Bidwells. There was nothing filed anywhere on behalf of the Bidwells until it was all over and that what I call a stray pleading or a wild pleading filed after the fact, which we included merely in the record merely to show that the Bidwells had an attorney and the attorney knows how to file a pleading in federal court and there's actually nothing in there in that pleading to the extent it could be considered. It really explains why the Bidwells didn't do anything for 14 months. What's the best basis that you have that shows that the district court properly granted summary judgment instead of giving Katz a chance to come in on behalf of the Bidwells at a late time? Well, the best basis is you track the court's opinion. Your Honor asked why, you know, what was the basis of the court's opinion. The court did not base its opinion on California law. In fact, it specifically rejected our argument that this was a statute, the state law was a statute of limitations that said we're applying the federal rules. And I look at this and I see that the Bidwells were given notice. They did nothing for 14 months. Furthermore, they did not give me any explanation. We all understand that when you do something late, sometimes you're allowed to come in late and do something that you should have done timely. But you have to give a reason. There was no reason, none. Like being sick or something? Anything. There was just nothing. And obviously Katz is represented by ABLE counsel and they know how to put something in the record and they didn't do it. And that's the strongest point I can offer. This all was considered by the district court. There's disagreement in the briefs over the standard of review. But what the court did here under a very unusual set of facts is balanced the facts. They looked, I'm considering this, I'm considering this. They considered everything they needed to consider. And they said, on balance, when we balance the factors, we're ruling for Taylor's office. And so this is an abuse of discretion. And there's nothing in the record. When somebody's late and they don't present any evidence whatsoever to explain why they're late. And it's 14 months. And the court also noted that there was a scheduling order, set the scheduling order, and nothing happened. Katz came in on a motion for summary judgment. Did not mention all of the prior bankruptcies. Just said, oh, we're first. Our office did all the legwork and dug up all the facts, the prior settlement agreement, which is lengthy and complicated, but for purposes of this argument, all the court needs to focus on is there was a global settlement whereby Katz's lien was released, and whereby Eggerman, the law firm's lien was released. And our office was the only party who came in and opposed that, and not for the work that we did. Katz would have received it even though the court concluded that that claim was released as part of the prior global settlement agreement. Why don't we hear from Katz on this issue right now? Thank you, Your Honor. Thank you. I have another issue. I'm happy to go in whatever order. This case is in this court just because Katz filed bankruptcy. Is that right? There's no question that Katz had priority but for the bankruptcy. The only reason that the case is in federal court is because Katz filed for bankruptcy. That's incorrect, Your Honor. The only reason the case is in federal court is because the U.S. filed a motion to remove based on their IRS lien. Why did Katz file for bankruptcy? This was years ago, much prior to all the surplus proceeds becoming an issue. I will note, though, that in the papers and also in oral argument, Mr. Taylor misstated one of the factual underpinnings as to why the Katz bankruptcy was not brought up initially. Before we get to that, while our minds are focused on it, your opponent says that you never put before the district court any factual information which would establish even the claim that the Bidwells did not receive notice. Do you want to respond to that? Certainly. Under 2924J, the trustee is obligated under law to submit all claims it receives into the superior court. It's not optional. It has to do that. I was sort of looking for an answer that said, yeah, we put in an affidavit for Mr. Bidwell, Mrs. Bidwell, Bidwell's lawyer, that they didn't get notice. My question is aimed at facts. What facts did you put before the district court to show that the Bidwells didn't receive proper notice? I put before the district court that Elizabeth Bidwell never received notice, but to also clarify. Was that in an argument? Did you file her affidavit or declaration? No, it was part of the proof of service on the notice that she's not listed is how I included that. I believe that the Bidwells, meaning Alan Bidwell, received the trustee's. You believe that? Did you put any of this in the form of a declaration before the court? My question, I guess, and the reason why I'm struggling is I want to give you a straight factual answer. The straight factual answer is the Bidwells clearly filed a claim with the trustee. So they knew, Alan Bidwell knew and received that notice. It's very clear to me from the record that they did not believe they needed to file an exact duplicate copy with Superior Court since the trustee was obligated under the law. You're telling us a whole bunch of things which would be very interesting and worthy of some real focus if there were a declaration in the record before the district court that said these things. I didn't receive notice. I didn't do this, et cetera, et cetera. What you're telling us is that these were claims made in attorney's pleadings, and there's no factual predicate for it. Am I missing something? You're missing, as Elizabeth Bidwell, you're missing the lack of the proof of service which doesn't list her, and there's no argument on the other side that it does list her or that she did receive it. Now, that being said, as the wife of the husband, was she aware of it? My guess is probably, but I don't know. They had the same attorney, didn't they? They did, and I don't believe they were divorced for the record. In most jurisdictions, if service is left properly at a proper address upon a person of suitable age and discretion, and there's another person living there, whether they're married, sister, brother, or whatever, it raises some legal presumptions, all of which you could have attacked by a factual declaration, but it's not present, right? But I have no argument as to the trustee's notice. The clerk's notice giving notice to the hearing was never given. Under federal interpleader law, you can file a late answer. You must be defaulted. You cannot. The court has no right to say, I don't accept Katz's amended claim, unless they were defaulted. They were never personally served. They were served on a single notice by the trustee by mail. You're talking Bidwell now. The Bidwells. Katz's claim is, you know, not before this court. The Bidwells got, let's assume you're correct. Let's assume I don't have the declarations, and both Elizabeth and Alan Bidwell got the trustee's notice. They never got the clerk's notice notifying them of the hearing. The 2924J summary procedure wasn't followed. They didn't get their due process. They didn't get their day in court. Much has been made as to 14 months, they never filed anything. Their claim, their entire claim, as mandated by law, was filed by the trustee.  I mean, when it came to federal court, your client raised the fact he made his appearance, and Taylor made his appearance. I would say that's largely correct, and I don't need to correct on minor details, which is answers were not filed in federal court, but when it was still in superior court, Taylor and Katz did file a claim themselves. But that happened in the superior court level, not the district court level. But basically the substance of your statement is correct. So you're saying if it's an interpleader, they have until eternity to file their claim? No, they must be defaulted. They must be served personally. That's under 28 U.S.C. 1655. They were not served personally. There's no dispute as to that. If they cannot be found, they must be served by publication. There's been no publication. There's no dispute about that. And if they fail to do so after being properly served, they can be defaulted. And Mr. Taylor at any time could have defaulted them, and Mr. Taylor at any time could have bought the Bidwell's claim. There was no magic to it. So the short answer is not to eternity. They certainly can have their rights cut off, but you can do a late filing in an interpleader if you haven't yet been defaulted. That's my current understanding of the law, and I've cited numerous citations to that. I've seen no contrary authority. Okay. Thank you. Did you have something else you want to add? Very briefly, Your Honor. Okay. I just note that this default argument, that the argument that this claim was, you know, somehow because you sent a letter to the trustee under the deed of trust, somehow that automatically translates into a pleading file with the court, which I don't accept. And this due process argument were never presented to the district court, ever. So I just note that point. Okay. Thank you both for your arguments. Very interesting case. It will be submitted for decision. We'll proceed to the next case on the calendar, which is Mulsky v. Cable. Counsel will come forward. Good morning, Your Honors. Hold on just one second.
judges: Ferguson, Siler, Hawkins